IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN SYPOLT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 19-cv-05991 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| THE ILLINOIS GAMING BOARD, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In 2018, Plaintiffs Kevin Sypolt, Trudy's Café, LLC, and Phase IV-D, Inc. submitted applications for video gaming establishment licenses to the Illinois Gaming Board ("IGB" or "Board"). After the IGB failed to take any action with respect to their applications, Plaintiffs brought this lawsuit, alleging various constitutional violations and common law torts committed by the IGB and certain current and former Board members, employees, and administrators. Defendants now seek dismissal of Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Dkt. No. 21.) For the following reasons, Defendants' motion is granted.

## BACKGROUND

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Plaintiffs as the non-moving parties. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

The IGB is a state agency composed of five members who are responsible for implementing and enforcing the Illinois Video Gaming Act, 230 ILCS 40/1, *et seq*. (Compl. ¶ 8, Dkt. No. 1); *see also* 230 ILCS, 10/5(b), 40/78. Board members are tasked with, among other

things, reviewing applications for gaming licenses and making approval determinations, as well as renewing and revoking current licenses when appropriate. *See* 230 ILCS 10/5(b)(1). The Administrator is a non-Board member who performs any and all duties assigned to him by the Board, *id.* at 10/5(a)(9), and the Board may employ other personnel as necessary to carry out its functions, *id.* at 10/5(a)(8).

Sypolt is the principal shareholder of Trudy's Café, LLC and a majority shareholder of Phase IV-D, Inc. (Compl. ¶ 5.) Plaintiffs run bars and restaurants located throughout Illinois. (*Id.* ¶¶ 26–27, 29.) On September 26, 2018 and November 29, 2018, Plaintiffs applied for video gaming establishment licenses for two of their locations. (*Id.* ¶¶ 27, 29.) The licenses would have allowed Plaintiffs to place and operate video gaming terminals[1] at those establishments. *See* 230 ILCS 40/5. However, Sypolt withdrew the applications in September 2019, as he could not afford to keep his establishments open while waiting for the Board to vote on the applications. (Compl. ¶¶ 28–29.) Plaintiffs claim that the Board refused to vote on their applications to retaliate against Sypolt for prevailing in a prior lawsuit against it. (*Id.* ¶¶ 34, 37–41.) According to Plaintiffs, while their applications were pending, three different establishments in the same areas as and similar in every material respect to Plaintiffs' establishments applied for and received video gaming establishment licenses. (*Id.* ¶¶ 31–33.)

After withdrawing the applications, Plaintiffs filed this lawsuit, asserting the following six claims: (1) a claim for violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983, brought against current Board members, the current Administrator, and current agents (collectively, the "Current Board Defendants"); (2) a claim for violation of the Due

---

[1] A video gaming terminal is a means of gambling defined as "any electronic video game machine that, upon insertion of cash, electronic cards or vouchers, or any combination thereof, is available to play or simulate the play of a video game . . . in which the player may receive free games or credits that can be redeemed for cash." 230 ILCS 40/5.

Process Clause of the Fourteenth Amendment under § 1983 against the Current Board Defendants; (3) an Illinois common law claim for tortious interference with prospective economic advantage against the Current Board Defendants; (4) the same tortious interference claim against former Board members and a former Administrator (collectively, the "Former Board Defendants"); (5) a common law civil conspiracy claim against the Current Board Defendants; and (6) the same civil conspiracy claim against the Former Board Defendants. Each Board member and agent is sued in his or her individual capacity.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### I. Claims Against the IGB

Although Plaintiffs do not appear to have asserted any particular claim against the IGB itself, they have named the IGB as a Defendant in the caption and listed it under the "Parties" heading in the complaint. (*See* Compl. ¶ 8.) Defendants move to dismiss any claims Plaintiffs might be seeking to assert against the Board because it is a state agency that cannot be sued under § 1983 and because a suit against the Board in federal court is barred by the Eleventh Amendment. In their response, Plaintiffs fail to address Defendants' arguments for dismissal of

the IGB. For present purposes, the Court therefore accepts that the IGB is a state agency. *See, e.g.*, *Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987) ("The jurisdictional bar of the Eleventh Amendment protects the state and its agencies; it does not shield political subdivisions.").

Section 1983 allows individuals to sue "persons acting under the color of state law" for civil rights violations. *Cosgriff v. County of Winnebago*, 876 F.3d 912, 915 (7th Cir. 2017). The Supreme Court has determined that a State is not a person under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989). That logic extends to state agencies, which are also not considered "persons" for § 1983 purposes. *See, e.g.*, *Carroll v. DeTella*, 255 F.3d 470, 471 (7th Cir. 2001). Since the Board is a state agency, it is not a "person" for purposes of a § 1983 claim.

Further, Defendants argue that the Eleventh Amendment precludes the Board, a state agency, from being sued in federal court. The Eleventh Amendment's prohibition on federal suits against the States extends to state agencies. *See Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) ("[A] state agency *is* the state for purposes of the eleventh amendment."). Suits against the State are barred unless the State has waived its immunity, Congress has validly abrogated the States' immunity, or the suit is against a state official seeking prospective equitable relief. *Darne v. State of Wis., Dep't of Revenue*, 137 F.3d 484, 488 (7th Cir. 1998). Because no exception applies in this case,[2] the Eleventh Amendment bars Plaintiffs from suing the Board in federal court.

---

[2] Illinois has partially waived its sovereign immunity insofar as it allows tort suits against the State to be pursued in the Illinois Court of Claims. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (citing 705 ILCS 505/8(d)). However, this waiver leaves intact the state's immunity for state-law claims pursued in federal court. *Id.*

### II. Section 1983 Claims

#### A. Quasi-judicial Immunity for Board Members

Among the Defendants named in Plaintiffs' § 1983 claims are five current members of the Board. Defendants contend that quasi-judicial immunity shields those Defendants from the § 1983 claims.

Quasi-judicial immunity attaches to individuals whose roles are "functionally comparable" to that of a judge, affording them absolute immunity from liability. *Butz v. Economou*, 438 U.S. 478, 513–14 (1978). In assessing whether government officials are entitled to quasi-judicial immunity, the Supreme Court applies a "functional approach," which looks to "the nature of the function performed, not the identity of the actor who performed it." *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (internal quotation marks omitted). The Supreme Court has also identified six non-exhaustive factors for courts to consider in making a determination of quasi-judicial immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (citing *Butz*, 438 U.S. at 512). "The Seventh Circuit has broadly considered these factors, without treating them as a test." *Wilson v. Ill. Dep't of Fin. & Pro. Regul.*, 376 F. Supp. 3d 849, 864 (N.D. Ill. 2019).

Only a handful of cases—most of which were brought in Nevada—have considered whether gaming board members are entitled to quasi-judicial immunity. It appears that every time this question has been presented, courts have found immunity to be warranted. *See Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 96 n.3 (3d Cir. 2011) ("[F]ederal courts

5

have uniformly concluded that state licensing bodies charged with deciding whether to award discretionary licenses are entitled to quasi-judicial immunity.").

In *Rosenthal v. State of Nevada*, 514 F. Supp. 907 (D. Nev. 1981), the district court highlighted the Nevada Gaming Commission's "power to issue subpoenas, compel attendance of witnesses, and administer oaths," and noted that "the Commission's hearings are conducted in a manner which has many of the traditional safeguards of a regular court." *Id.* at 914; *see also Kraft v. Jacka*, 669 F. Supp. 333, 337 (D. Nev. 1987) (adopting the reasoning articulated in *Rosenthal* to find the Nevada Gaming Control Board immune). The Ninth Circuit later agreed in *Romano v. Bible*, 169 F.3d 1182 (9th Cir. 1999), that the Nevada Gaming Commission is entitled to quasi-judicial immunity. The Ninth Circuit discussed many of the factors considered in *Rosenthal*, as well as the Nevada Gaming Commission's insulation from political influence. *Id.* at 1187 (noting that Commission members are appointed for fixed terms, no political officer can be a member, and no more than three members can be of the same political party). Most recently, the Third Circuit has found that Pennsylvania Gaming Control Board members are entitled to quasi-judicial immunity. *See Keystone Redevelopment Partners*, 631 F.3d 89. The Third Circuit emphasized many of the same factors as the District of Nevada and the Ninth Circuit, and also noted that the Pennsylvania Gaming Control Board is required to base its licensing decisions on statutory criteria, applying a clear and convincing evidence standard. *Id.* at 99.

The Seventh Circuit has considered whether state officials are entitled to quasi-judicial immunity in other contexts. In *Tobin for Governor v. Illinois State Board of Elections*, 268 F.3d 517 (7th Cir. 2001), the Seventh Circuit found that Illinois State Board of Elections members are entitled to absolute immunity. One consideration was the members' insulation from political influence—the Seventh Circuit noted that State Board of Elections members are appointed for a

6

fixed term and cannot engage in political activity. *Id.* at 526. Further, when the State Board of Elections members evaluate nomination petitions, they have the power to subpoena and examine witnesses and administer oaths. *Id.* at 522. The Seventh Circuit also emphasized that because the State Board of Elections is likely to come under intense political scrutiny, immunity is necessary to protect the integrity of the electoral process and protect the board members from harassment. *Id.* at 522. Similarly, in *Heyde v. Pittenger*, 633 F.3d 512, the Seventh Circuit granted quasi-judicial immunity to members of a county's Board of Review, which hears challenges to county officials' property assessments. The Seventh Circuit observed that, prior to increasing an assessment, the Board of Review was required to provide the property owner with notice and an opportunity to be heard. *Id.* at 519. It further found that the Board of Review had the power to administer oaths, examine witnesses, and issue subpoenas, all "hallmarks of the sort of duties that entitle government or administrative actors to the protection afforded by the doctrine of absolute immunity." *Id.* at 518–19. Furthermore, the availability of an appeals process also "weigh[ed] toward granting absolute immunity." *Id.* at 519.

The Illinois statute creating the IGB demonstrates that Board members exercise the same responsibilities that the Seventh Circuit and other courts have found to justify quasi-judicial immunity in other contexts. *See* 230 ILCS 10/5. Board members are insulated from political influence because they are appointed for a specific term and they are not allowed to engage in political activity. 230 ILCS 10/5(a)(3), (a)(5.5). They have the ability to "conduct hearings, issue subpoenas for the attendance of witnesses and subpoenas duces tecum . . . and to administer oaths and affirmations to the witnesses." 230 ILCS 10/5(c)(9); *see Tobin for Governor*, 268 F.3d at 522 (emphasizing the same abilities in granting immunity to State Board of Elections members). Board members must keep public records of all proceedings. 230 ILCS 10/5(b)(9). When making

7

decisions regarding licensees' complaints, Board members must apply a "clear and convincing evidence" standard. 230 ILCS 10/5(b)(7); *see also Keystone Redevelopment Partners*, 631 F.3d at 99 (stating that the Pennsylvania Gaming Control Board's application of the clear and convincing evidence standard supported quasi-judicial immunity). There is also an appeals process, 230 ILCS 10/5(b)(1), 10/17, 10/17.1, and Sypolt admits to availing himself of that process previously. (*See* Compl. ¶ 46.)

Furthermore, immunity from suit is necessary for Board members to perform their jobs without harassment or intimidation. These individuals "are charged with the awesome responsibility of regulating the gaming industry . . . and keeping undesirable elements out of the gaming industry." *Rosenthal*, 514 F. Supp. at 914. As the Third Circuit noted, "[t]he financial interests at stake [in the industry] are extremely large." *Keystone Redevelopment Partners*, 631 F.3d at 97; *see also Butz*, 438 U.S. at 515 ("When millions may turn on regulatory decisions, there is a strong incentive to counter-attack." (internal quotation marks omitted)). Plaintiffs acknowledge that their establishments could enjoy more than $5 million in revenue if they were to obtain a video gaming establishment license. (*See* Compl. ¶ 3.) Without absolute immunity, the threat of a lawsuit could affect Board members' ability to regulate the Illinois gaming industry. As other courts to address this question have observed:

> In this important area of public interest where the decisions made by these individuals often involve millions of dollars and the reputation of a whole state, there is a danger that a person who receives an adverse decision will retaliate and seek vengeance in the courts. The discretion and judgment of these officials in initiating administrative proceedings and in deciding matters of great public importance might be affected if their immunity from damages arising from those decisions was less than complete.

*Keystone Redevelopment Partners*, 631 F.3d at 97 (quoting *Kraft*, 669 F. Supp. at 337).

This rationale applies equally to the Board members' decisions. Considering all the factors

8

together, the Court finds that the Board members are entitled to quasi-judicial immunity. Accordingly, the § 1983 claims are dismissed with prejudice as to the five current Board members. *See, e.g.*, *Serrano v. Guevara*, 315 F. Supp. 3d 1026, 1037 (N.D. Ill. 2018) (dismissal on absolute immunity grounds should be with prejudice).

### B. Non-Board Member Employees

In addition to the five current Board members, the § 1983 claims also name three non-Board member employees of the IGB. Those employees are Marcus Fruchter, the current Administrator of the IGB (Compl. ¶ 14), and Thomas Hobgood and Fidel Aguilar, investigators employed by the IGB (*id.* ¶¶ 15–16). According to Plaintiffs, all three of these Defendants deprived Plaintiffs of their rights to occupational liberty under the Fourteenth Amendment's due process clause and violated Plaintiffs' rights to equal protection under the Fourteenth Amendment.

#### 1) Occupational Liberty

Plaintiffs allege that Hobgood, Aguilar, and Fruchter violated their procedural due process rights by depriving them of the right to engage in a "common occupation of life"—namely, running a licensed video gaming establishment. They acknowledge that the question of whether there is a protected liberty interest in gaming is a matter of first impression for this Court.

The right to occupational liberty has long been recognized as protected by the due process clause. *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) (noting that "[t]he concept of liberty protected by the due process clause has long included occupational liberty—the liberty to follow a trade, profession, or other calling" (internal quotation marks omitted)). In particular, the Supreme Court has repeatedly described the right "to engage in any of the ***common*** occupations of life" as a liberty interest protected by the due process clause. *E.g.*, *Bd. of Regents*

9

of State Colls. v. Roth, 408 U.S. 564, 571 (1972) (emphasis added). Thus, this Court must determine whether gaming is one of those common occupations entitled to due process protection. *Becker v. Ill. Real Est. Admin. & Disciplinary Bd.*, 884 F.2d 955, 957 (7th Cir. 1989).

States with long histories of gaming (like Nevada) recognize that "gaming is a privilege conferred by the state and does not carry with it the rights inherent in useful trades and occupations." *State v. Rosenthal*, 559 P.2d 830, 835 (Nev. 1977); *see also Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) ("[The plaintiff's] interest in a gaming license is not so fundamental as to warrant constitutional protection apart from its status under state law."); *Thomas v. Bible*, 694 F. Supp. 750, 760 (D. Nev. 1988) (finding that licensed gaming "is a matter reserved to the states," and does not give rise to any federally protected constitutional rights). Furthermore, the Illinois Supreme Court has held that "[t]here is no common-law right in Illinois to engage in or profit from gambling," observing that the Video Gaming Act "is an exception to the general prohibition against gambling." *J & J Ventures Gaming, LLC v. Wild, Inc.*, 67 N.E.3d 243, 251 (Ill. 2016). That holding has been described as "flatly foreclos[ing] the notion that a protected liberty interest exists in the form of a gambling license." *Dolly's Cafe LLC v. Ill. Gaming Bd.*, No. 19 C 01666, 2019 WL 6683046, at *3 (N.D. Ill. Dec. 6, 2019) (citing *J & J Ventures Gaming*, 67 N.E.3d at 251).

This Court agrees that there is no protected liberty interest in gaming. The Seventh Circuit has recognized that "[a] transaction that the state may outlaw . . . is not a 'common occupation.'" *Scott v. Village of Kewaskum*, 786 F.2d 338, 341 (7th Cir. 1986); *see also Miles v. Village of Dolton*, No. 15 CV 5017, 2016 WL 1161293, at *2 (N.D. Ill. Mar. 23, 2016) ("[W]hen a state regulates an occupation it is otherwise empowered to extinguish (such as operating a tavern), then it has removed the liberty interest in that occupation."). As discussed above, the Illinois Supreme

10

Court has held that "gambling on video gaming terminals is permitted in Illinois only as authorized by" the Video Gaming Act. *J & J Ventures Gaming*, 67 N.E.3d at 251. Accordingly, this Court concludes that running a video gaming establishment is not a "common occupation" protected by the Fourteenth Amendment's due process clause. *See, e.g.*, *VanHorn v. Neb. State Racing Comm'n*, 304 F. Supp. 2d 1151, 1167 (D. Neb. 2004) (finding that jobs in the horseracing industry are not "common occupations," because they can be completely outlawed by state legislature); *Payne v. Fontenot*, 925 F. Supp. 414, 424 n.45 (M.D. La. 1995) (concluding that gambling is an "uncommon occupation"); *Ziskis v. Kowalski*, 726 F. Supp. 902, 911 (D. Conn. 1989) (holding that gambling is not a "common occupation"). For that reason, Plaintiffs' due process claims are dismissed without prejudice.

## 2) Equal Protection

In addition, Plaintiffs bring "class-of-one" equal protection claims against Hobgood, Aguilar, and Fruchter. A class-of-one equal protection claim asserts "that an individual has been irrationally singled out, without regard for any group affiliation, for discriminatory treatment." *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (internal quotation marks omitted). A plaintiff can prevail on a "class of one" claim by showing that they "ha[ve] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Defendants argue that the class-of-one equal protection claims should be dismissed as to these three non-Board member employees because Plaintiffs fail to plead facts showing how any Defendant singled Plaintiffs out for discriminatory treatment. As to Fruchter, Defendants argue that the sole allegation regarding his conduct fails to show how he discriminated against or otherwise violated Plaintiffs' rights. And with respect to Hobgood and Aguilar, Defendants

contend that Plaintiffs do not sufficiently plead facts showing that either had any role in the IGB's decisionmaking process or how Hobgood and Aguilar's investigation differed from their investigation of other similarly situated video gaming establishment license applicants. In their response brief, Plaintiffs did not respond to Defendants' arguments because they mistakenly believed that Defendants did not challenge the merits of their equal protection claims and instead sought dismissal solely based on quasi-judicial immunity. Because Plaintiffs failed to respond to Defendants' merits arguments on the equal protection claims, they have waived or forfeited any argument against dismissal. *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012). For that reason, the equal protection claims against Hobgood, Aguilar, and Fruchter are dismissed without prejudice.

        3)   *Section 1983 Civil Conspiracy*

Finally, Plaintiffs allege that Current Board Defendants conspired to violate Plaintiffs' equal protection and due process rights. However, because Plaintiffs have failed to state a cognizable § 1983 claim against any Current Board Defendant, their § 1983 civil conspiracy claim must be dismissed. *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1046 (N.D. Ill. 2018).

**III.**     **Supplemental Jurisdiction over State-Law Claims**

In addition to the constitutional claims, Plaintiffs assert state-law claims for tortious interference with prospective business advantage against both Current Board Defendants and Former Board Defendants, as well as civil conspiracy claims predicated on the tortious interference claims.

Having dismissed the § 1983 claims over which this Court had original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, the Court must now decide whether to relinquish its

supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367. "Although the decision is discretionary, when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (internal quotation marks omitted). That presumption can be rebutted under certain circumstances, including where:

> (1) the statute of limitations has run on the pendant claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendant claims can be decided.

*Id.* at 480. The circumstances here do not rebut the presumption in favor of relinquishing federal jurisdiction. The matter is still in its early stages and there are no pressing statute of limitations issues. In addition, the viability of Plaintiffs' state-law claims turn on Current Board Defendants and Former Board Defendants' entitlement to sovereign immunity under the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1, and it is not absolutely clear whether the state-law claims must be dismissed on that basis Consequently, the Court declines to exercise supplemental jurisdiction over the state-law claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 21) is granted. The § 1983 claims brought against Current Board Member Defendants are dismissed with prejudice. The § 1983 claims asserted against Former Board Member Defendants and Non-Board Member Defendants are dismissed without prejudice. Plaintiffs will be granted leave to file an amended complaint with respect to the §1983 claims against Former Board Member Defendants and Non-Board Member Defendants. Nonetheless, with all federal claims currently dismissed, the Court

relinquishes jurisdiction over the state-law claims and thus does not decide the merits of the motion to dismiss those claims.

                                              ENTERED:

Dated: March 31, 2021

                                              Andrea R. Wood
                                              United States District Judge