**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KEVIN SYPOLT, et al.,             )
                                            )
        Plaintiffs,           )
                                            )     No. 19-cv-05991
       v.                     )
                                            )     Judge Andrea R. Wood
THE ILLINOIS GAMING BOARD, et al.,   )
                                            )
        Defendants.       )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Kevin Sypolt is the principal of multiple corporate entities that own establishments featuring video gaming devices for gambling. After one of the companies managed by Sypolt sued the Illinois Gaming Board ("IGB" or "Board"), the state agency tasked with regulating video gaming, the IGB allegedly launched a campaign of retaliation against Sypolt and two of his businesses, Plaintiff Phase IV-D, Inc. ("Phase IV-D") and Trudy's Café, LLC ("Trudy's Café"). In particular, Plaintiffs claim that the IGB unreasonably delayed its consideration of license applications submitted by Phase IV-D and Trudy's Café, costing them video gaming revenue and ultimately forcing the closure of two of Plaintiffs' establishments. After the initial complaint was dismissed, Plaintiffs filed an amended complaint asserting two claims under 42 U.S.C. § 1983 alleging that IGB agents Thomas Hobgood, Fidel Aguilar, Mark Ostrowski, and Marcus Fruchter (together, "Defendants") conspired to deprive Plaintiffs of their constitutional rights. Defendants now move to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 48.) For the following reasons, Defendants' motion is granted in part and denied in part.

# BACKGROUND

For the purposes of the present motion to dismiss, the Court accepts all well-pleaded facts in the amended complaint as true and views those facts in the light most favorable to Plaintiffs as the non-moving parties. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The amended complaint alleges as follows.

The IGB is a state agency composed of five members who are responsible for implementing and enforcing the Illinois Video Gaming Act, 230 ILCS 40/1 *et seq.* 230 ILCS 10/5(b), 40/78. Board members are tasked with, among other things, reviewing applications for gaming licenses and making approval determinations, as well as renewing and revoking current licenses when appropriate. *See* 230 ILCS 10/5(b)(1). The Administrator is a non-Board member who performs any and all duties assigned to him by the Board, *id.* at 10/5(a)(9), and the Board may employ other personnel as necessary to carry out its functions, *id.* at 10/5(a)(8).

Sypolt is the sole member of Trudy's Café and a majority shareholder of Phase IV-D. (Am. Compl. ¶ 5.) Sypolt, through various corporate entities such as Trudy's Café and Phase IV-D, operates bars and restaurants in various Illinois locations. (*Id.* ¶¶ 32, 42, 45, 65–67.) In 2014, one of the companies Sypolt managed, Windy City Promotions, LLC, installed electronic product promotion kiosks[1] in one of its establishments. (*Id.* ¶ 20.) However, there was an existing IGB advisory opinion stating that electronic promotion kiosks were illegal. (*Id.* ¶ 21.) Based on that advisory legal opinion, the IGB seized Windy City Promotions's kiosks. (*Id.*) In response, Windy City Promotions filed a lawsuit against the IGB challenging its authority to seize the electronic product promotion kiosks pursuant to that advisory opinion. (*Id.* ¶ 22.) Ultimately, Windy City

---

[1] The electronic product promotion kiosks invited participants to insert money into the kiosk in exchange for a coupon for products sold by a particular company. *Windy City Promotions, LLC v. Ill. Gaming Bd.*, 87 N.E.3d 915, 917 (Ill. App. Ct. 2017). At the same time, the participant would be automatically entered into a sweepstakes. *Id.*

Promotions received a ruling in its favor from the Illinois Appellate Court. (*Id.* ¶¶ 23–24); *see also Windy City Promotions, LLC v. Ill. Gaming Bd.*, 87 N.E.3d 915 (Ill. App. Ct. 2017).

According to Sypolt, many Board members and IGB staff were angry at him for successfully challenging the IGB's authority in the Windy City Promotions lawsuit. (Am. Compl. ¶¶ 25, 34.) Consequently, the IGB sought to retaliate against Sypolt by treating him unfavorably in subsequent dealings. (*Id.* ¶¶ 1, 25.) The first alleged instance of retaliation against Sypolt came indirectly, in connection with four video gaming establishment license applications submitted by Mexican Woman Gaming LLC ("MWG"), a company controlled by Sypolt's wife, Renee Fanjon. (*Id.* ¶ 26.) After delaying a vote on MWG's applications for over a year, the IGB ultimately denied the applications on May 28, 2015—fifteen days after the trial court issued a ruling favorable to Windy City Promotions in its lawsuit against the IGB. (*Id.* ¶ 27.) The IGB's then-Administrator, Defendant Ostrowski, sent a letter to Fanjon explaining that the Board denied MWG's applications because Fanjon was married to and had business associations with Sypolt, thereby giving the IGB just cause to deny MWG a video gaming establishment license. (*Id.* ¶¶ 27–28.) Specifically, Ostrowski's letter asserted that Fanjon's association with Sypolt presented a problem because Sypolt's company operated electronic product promotion kiosks that the IGB deemed illegal. (*Id.* ¶ 28.) While Ostrowski acknowledged the recent trial court ruling in favor of Windy City Promotions, he noted that the trial court ruled on procedural grounds and did not actually address the legality of the kiosks. (*Id.*)

In 2017, Sypolt's company, Phase IV-D, applied for a video gaming establishment license for its bar and restaurant, Trudy's Café Cash Island. (*Id.* ¶ 32.) Defendant Hobgood was the IGB investigator assigned to review Phase IV-D's application. (*Id.* ¶ 13.) During their first meeting on January 31, 2017, Hobgood informed Sypolt about the ill will that the Windy City Promotions

lawsuit had engendered at the IGB and that Ostrowski was particularly upset because the Illinois

Appellate Court's decision made him look like "a paper tiger"—*i.e.*, undermined his asserted

power over licensing decisions. (*Id.* ¶ 34.) In addition, Hobgood told Sypolt that the IGB had

(presumably compromising) photographs of Sypolt and warned him that "when you poke a bear

with a stick, it may bite back." (*Id.* ¶ 35.) When the two met again in March 2017, Hobgood asked

Sypolt to fulfill certain requests entirely unrelated to Phase IV-D's application. (*Id.* ¶ 36.)

Specifically, Hobgood asked Sypolt to investigate whether there was any relationship between

Ostrowski and the daughter of a prominent organized crime figure and instructed Sypolt to find

incriminating information about an individual who was convicted in a case involving public

corruption. (*Id.*)

The Board denied Phase IV-D's video gaming establishment license application on June 2,

2017, citing Phase IV-D's failure to disclose the prior denials of MWG's applications in one

section of its application, even though a different section of that application contained such a

disclosure. (*Id.* ¶ 37.) Phase IV-D appealed the denial of its application and the Administrative

Law Judge ("ALJ") who heard the appeal recommended that the IGB grant Phase IV-D a video

gaming establishment license, likening the omission of MWG's prior denials in one section to a

typographical error. (*Id.* ¶¶ 38–40.) In accordance with the ALJ's recommendation, the IGB

approved Phase IV-D's application. (*Id.* ¶ 41.)

A different entity controlled by Sypolt, Trudy's Café, applied for two video gaming

establishment licenses in 2018. First, on September 26, 2018, Trudy's Café applied for a license

for its establishment in Midlothian, Illinois. (*Id.* ¶ 43.) Shortly thereafter, on November 29, 2018,

Trudy's Café submitted an application for its establishment in Sauk Village, Illinois.  (*Id.* ¶ 45.)

Once again, Hobgood was assigned to review the applications that Sypolt submitted through

Trudy's Café. When the two first discussed the applications in January 2019, Hobgood told Sypolt that another IGB investigator, Defendant Aguilar, was looking to build a case to deny Trudy's Café's applications and also revoke Phase IV-D's license by linking those companies with Windy City Promotions and the MWG. (*Id.* ¶ 46.) Further, Hobgood warned Sypolt that he would not submit Trudy's Café's applications for another eight months and that the Board would not vote on the applications in 2019. (*Id.*) About a month later, Hobgood and Aguilar both interviewed Sypolt in connection with Trudy's Café's applications. (*Id.* ¶ 47.) Most of Aguilar's questions focused on the Windy City Promotions litigation, which had no relevance to Trudy's Café's pending applications. (*Id.*)

When Hobgood and Sypolt met on March 4, 2019, Hobgood advised Sypolt that Aguilar was working to ensure the denial of both of Trudy's Café's applications in retaliation for the Windy City Promotions lawsuit. (*Id.* ¶ 48.) Hobgood explained that the Board's members had "long memories" and a practice of delaying votes on applications submitted by applicants who were disliked by IGB staff, with the hope that the delay would drive the disfavored applicants out of business. (*Id.*) Also during the meeting, Hobgood admitted to Sypolt that while the MWG's four applications were initially recommended for approval, Ostrowski successfully lobbied the Board to vote to deny the applications due to Fanjon's association with Sypolt. (*Id.* ¶ 31.)

About three months later, Hobgood informed Sypolt that he would recommend that the Board deny Trudy's Café's two applications and also revoke Phase IV-D's license in retaliation for the Windy City Promotions lawsuit. (*Id.* ¶ 49.) By that time, Ostrowski had left his IGB Administrator position but Hobgood explained that the IGB "higher ups" remained upset that the lawsuit had undermined Ostrowski. (*Id.*) In August 2019, Sypolt reported to Ostrowski's successor as IGB Administrator, Defendant Fruchter, that Hobgood had made improper and

irrelevant requests during the March 2017 meeting concerning Phase IV-D's application. (*Id.* ¶ 50.) Fruchter responded only by asking why Sypolt had not reported Hobgood's improper requests earlier. (*Id.*)

Over the several months that Trudy's Café's two applications were pending, the Board voted on video gaming establishment license applications submitted by hundreds of establishments, many similar in size and location to Trudy's Café's establishments. (*Id.* ¶ 51.) Lacking the anticipated revenue from video gaming, Trudy's Café could not afford to keep the Midlothian and Sauk Village establishments open and had to shut both down. (*Id.* ¶ 52.) Finally, on November 7, 2019 (two months after the commencement of the present litigation), the Board issued an initial denial of both applications. (*Id.* ¶¶ 53–54.) In response, Trudy's Café requested an evidentiary hearing before an ALJ. (*Id.* ¶ 55.) Ultimately, the ALJ recommended that the applications be denied because neither of the establishments had a liquor license, a statutory precondition for issuance of a video gaming establishment license. (*Id.* ¶¶ 57–61.) Both the Midlothian and Sauk Village establishments had a liquor license when they were open but surrendered their licenses after the IGB's delay forced their closure. (*Id.* ¶¶ 56–59.) Based on the ALJ's recommendation, the Board issued a final ruling denying Trudy's Café's applications on April 21, 2021. (*Id.* ¶ 62.)

Plaintiffs have brought the present lawsuit alleging that the IGB's delay in voting on Phase IV-D and Trudy's Café's applications caused Plaintiffs' businesses to suffer substantial losses. In their original complaint, Plaintiffs asserted various constitutional and common law tort claims against Hobgood, Aguilar, Ostrowski, Fruchter, the IGB, and certain current and former Board members. This Court dismissed the claims against the IGB as barred by the Eleventh Amendment and the § 1983 claims against the Board members based on principles of quasi-judicial immunity.

The remainder of the claims were dismissed without prejudice for failure to state a claim. Plaintiffs subsequently submitted the present amended complaint, which asserts two § 1983 conspiracy claims against only Hobgood, Aguilar, Ostrowski, and Fruchter.[2]

## DISCUSSION

Plaintiffs contend that Defendants conspired to deprive Plaintiffs of their Fourteenth Amendment rights to equal protection and to retaliate against them for exercising their First Amendment rights. Once again, Defendants move to dismiss all claims. First, Defendants argue that the claims against Ostrowski and Fruchter must be dismissed for lack of standing pursuant to Rule 12(b)(1). Then, Defendants argue that the remaining claims should be dismissed under Rule 12(b)(6) for failure to state a claim. The Court begins by addressing whether Plaintiffs have standing to assert their claims against Ostrowski and Fruchter.

### I.    Standing

According to Defendants, Plaintiffs lack standing to bring their claims against Ostrowski and Fruchter because the amended complaint's allegations fail to establish that either Defendant's conduct caused any injury to Plaintiffs.

Standing is an essential component of Article III's limitation of federal courts' judicial power only to cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). There are three elements that constitute the "irreducible constitutional minimum" of standing. *Lujan*, 504

---

[2] Counts III and IV of the amended complaint assert two state-law conspiracy claims. Plaintiffs have now conceded that sovereign immunity precludes them from pursuing those claims in federal court. (Pl.'s Resp. to Defs. Rule 12(b)(1) and (6) Mot. to Dismiss at 6, Dkt. No. 50.) Accordingly, Counts III and IV are dismissed without prejudice to Plaintiffs pursuing relief in the Illinois Court of Claims. *See generally Parmar v. Madigan*, 106 N.E.3d 1004, 1007–10 (Ill. 2018).

U.S. at 560. A "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks omitted). Where a plaintiff does not have Article III standing, a federal district court lacks subject-matter jurisdiction to hear his or her claims. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017).

A defendant may raise either a facial or factual challenge to a plaintiff's standing. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A facial challenge requires "only that the court look to the complaint and see if the plaintiff has sufficiently ***alleged*** a basis of subject[-]matter jurisdiction." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). By contrast, "a factual challenge lies where the complaint is formally sufficient but the contention is that there is ***in fact*** no subject[-]matter jurisdiction." *Id.* at 444 (internal quotation marks omitted). Where a defendant mounts a factual challenge, "the court may look beyond the pleadings and view any evidence submitted to determine if subject[-]matter jurisdiction exists." *Silha*, 807 F.3d at 173. Once a defendant has proffered evidence calling the plaintiff's standing into question, "the presumption of correctness that [is] accord[ed] to a complaint's allegations falls away . . . and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Apex Digit.*, 572 F.3d at 444 (internal quotation marks and citations omitted).

As to Ostrowski, Defendants have come forward with evidence showing that Ostrowski left the IGB in March 2018[3] and thus claim that he could not have been involved in any decision causing an injury to Plaintiffs. But while Defendants suggest Ostrowski left the IGB only a short time after Phase IV-D submitted its video gaming establishment license application (and thus could not have been involved in any misconduct related to the IGB's consideration of that

---

[3] Defendants attach to their brief in support of their motion to dismiss a copy of the IGB's meeting minutes from April 2018 for the purpose of showing the presence of an acting administrator instead of Ostrowski. (*See* Defs. Mem. of Law in Support of Their Rule 12(b)(1) and (b) Mot. To Dismiss, Ex. 1, Dkt. No. 49-1.)

application), their purported evidence does not establish when prior to March 2018 he left the IGB or that he left before he could injure Plaintiffs. Indeed, assuming that Ostrowski departed the IGB in March 2018, that would not be inconsistent with Plaintiffs' allegations. In particular, Plaintiffs allege that Phase IV-D submitted its application in January 2017 and that the IGB initially denied that application in June 2017 based on a technicality. Both events occurred prior to March 2018. Plaintiffs also allege that the technicality cited by the IGB as the basis for its initial denial was pretext and that the fact that Hobgood, in the course of his investigation of Phase IV-D's application, warned Sypolt that Ostrowski was upset with him supports a reasonable inference that Ostrowski wrongfully involved himself in the IGB's initial denial. That inference is supported by Ostrowski's earlier alleged interference with the approval of the MWG's applications simply because MWG's principal was Sypolt's wife.

Moreover, even if Ostrowski left the IGB before Trudy's Café submitted its two video gaming establishment license applications, that would not necessarily mean that he could not be held liable for the denial of those applications. "The doctrine of civil conspiracy extends liability for a tort, here the deprivation of constitutional rights, to persons other than the actual wrongdoer." *Hostrop v. Bd. of Junior Coll. Dist. No. 515*, 523 F.2d 569, 576 (7th Cir. 1975) (citation omitted). Thus, "a conspiracy may be used as the legal mechanism through which to impose liability on each and all the defendants without regard to the person doing the particular act." *Id.* (internal quotation marks omitted); *see also Tillman v. Burge*, 813 F. Supp. 2d 946, 990 (N.D. Ill. 2011) ("The very purpose of the conspiracy doctrine is to hold coconspirators liable for the substantive acts of those with whom they have entered a conspiracy."). Here, Plaintiffs have pleaded that Ostrowski joined the conspiracy and that the overt acts in furtherance of the conspiracy caused them damage. *See Hostrop*, 523 F.2d at 576 ("The damage for which recovery

may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts." (internal quotation marks omitted)). That Ostrowski left the IGB before certain of the overt acts occurred does not matter because once an individual joins a conspiracy, he may be held liable for any wrongful act committed in furtherance of the conspiracy. *Cf. United States v. Patel*, 879 F.2d 292, 294 (7th Cir. 1989) (explaining in a criminal conspiracy that a conspirator cannot limit his responsibility for the conspiracy's consequences by ceasing to participate but must instead take some affirmative action to abandon the conspiracy).

Similarly, as to Fruchter, it is enough for present purposes that Plaintiffs have pleaded Fruchter's involvement in the conspiracy. That Fruchter did not join the IGB until May 2019 does not absolve him from liability for overt acts from before that time. *Cf. United States v. Read*, 658 F.2d 1225, 1230 (7th Cir. 1981) ("Each conspirator is liable for overt acts of every other conspirator done in furtherance of the conspiracy, whether the acts occurred before or after he joined the conspiracy."). And while Defendants argue that the amended complaint's only allegation specific to Fruchter says nothing about his involvement in a conspiracy, that is a Rule 12(b)(6) issue, which the Court will address below. For purposes of Rule 12(b)(1), Plaintiffs have standing to bring their claims against Ostrowski and Fruchter because they have pleaded that they were injured by a conspiracy that those two Defendants joined.

## II.     Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs bring two civil conspiracy claims pursuant to 42 U.S.C. § 1983, alleging that Defendants conspired to violate Plaintiffs' equal protection and First Amendment rights. To state a § 1983 conspiracy claim, a plaintiff must allege that there was "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Wheeler v. Piazza*, 364 F. Supp. 3d 870, 880 (N.D. Ill. 2019) (quoting *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)). Moreover, because "conspiracy is not an independent basis for liability" plaintiff must "show an underlying constitutional violation and demonstrate that the defendants agreed to cause the constitutional harm." *Fulton v. Bartik*, Nos. 20 C 3118, 20 C 3119, 2021 WL 2712060, at *11 (N.D. Ill. July 1, 2021). Here, Defendants contend that the amended complaint should be dismissed because Plaintiffs' conspiracy claims are barred by the intracorporate conspiracy doctrine. Alternatively, Defendants argue that Plaintiffs fail to plead adequately the existence of an unlawful conspiracy or any underlying violations of Plaintiffs' constitutional rights.

### A.    Intracorporate Conspiracy Doctrine

The intracorporate conspiracy doctrine provides that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). While the Seventh Circuit has applied the intracorporate conspiracy doctrine to conspiracy claims brought under 42 U.S.C. § 1985, *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994), it has not addressed the applicability of the doctrine to § 1983 conspiracy claims in a published

opinion,[4] *Liggins v. City of Chicago*, No. 1:20-cv-04085, 2021 WL 2894167, at *5 (N.D. Ill. July 9, 2021). Two other Circuits have concluded that the intracorporate conspiracy doctrine applies in § 1983 actions just as in § 1985 actions. *See Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019); *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010).

Defendants assert that most courts in this District have found the intracorporate conspiracy doctrine applicable to § 1983 claims. *See Strauss v. City of Chicago*, 346 F. Supp. 3d 1193, 1210 (N.D. Ill. 2018) ("Most courts in this district have held that [the intracorporate conspiracy doctrine] applies to conspiracy claims under 42 U.S.C. § 1983."). On the other hand, the Seventh Circuit "has on various occasions affirmed conspiracy claims involving only police officers from the same department." *Liggins*, 2021 WL 2894167, at *5 (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1253–61 (7th Cir. 1984)). Thus, "district courts have overwhelmingly declined to dismiss conspiracy claims against police officers pursuant to the intracorporate conspiracy doctrine." *Id.*

Even assuming that the intracorporate conspiracy doctrine does apply to § 1983 conspiracy claims, there are nonetheless two exceptions to the doctrine. Specifically, the Seventh Circuit has held that the intracorporate conspiracy doctrine is inapplicable "(1) 'where corporate employees are shown to have been motivated solely by personal bias'; and (2) where 'the conspiracy was part of some broader discriminatory pattern, or permeated the ranks of the

---

[4] In an unpublished opinion relied upon by Defendants, the Seventh Circuit stated, in dicta, that because all defendants in a § 1983 action were public employees, "a conspiracy claim has no role to play." *Scott v. City of Chicago*, 619 F. App'x 548 (7th Cir. 2015). Courts in this District, however, have noted that in making that pronouncement, the Seventh Circuit relied on § 1985(3) caselaw. *See Pena v. Otiz*, 521 F. Supp. 3d 747, 751 (N.D. Ill. 2021). One court suggested, based on the circumstances, that the Seventh Circuit "assumed that [the *Scott*] Plaintiff was seeking to state a conspiracy claim under § 1985." *Wheeler*, 364 F. Supp. 3d at 881 n.7. Thus, this Court does not find *Scott* particularly instructive as to whether the Seventh Circuit would apply the intracorporate conspiracy doctrine to § 1983 conspiracy claims.

organization's employees.'" *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 779 (N.D. Ill. 2014)

(quoting *Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 4 F.3d 465, 470–71 (7th Cir. 1993)).

Accepting the allegations in the amended complaint as true, as it must at this stage in the

proceedings, the Court finds that both exceptions would apply here. First, Plaintiffs have alleged

that Sypolt and his businesses were targeted only because Ostrowski and the IGB were upset at

him for challenging their authority in the Windy City Promotions lawsuit. If Defendants are found

to have treated Plaintiffs' applications unfavorably only because they were angry at Sypolt, the

interests of the IGB "would have played no part in the employees' collective action, so the action

could not have been taken within the scope of employment." *Hartman*, 4 F.3d at 470; *see also*

*Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971, 985 (N.D. Ill. 2013) (holding that the

intracorporate conspiracy doctrine did not apply where the plaintiff sufficiently alleged that

defendants "acted with personal animus to retaliate against" the plaintiff for exercising his free

speech rights).

Plaintiffs have also alleged that it was not just Defendants who were biased against them

but that animus toward Plaintiffs permeated the entire IGB. For example, Hobgood allegedly told

Sypolt that the Windy City Promotions litigation "had angered many [Board] members and [IGB]

staff" and that the Board "purposefully delays voting on applications submitted by applicants who

its staff members do not like with the goal of driving those applicants out of business." (Am.

Compl. ¶¶ 34, 48.) And Defendants' efforts at undermining Plaintiffs' applications would

necessarily require Board members to vote consistent with those efforts since it is the Board that

has the final say on agency action.[5] *See Spalding*, 24 F. Supp. 3d at 780 (declining to apply the

---

[5] Plaintiffs allege that the Board (*i.e.*, the IGB's voting members) was a participant in the conspiracy. (*E.g.*, Am. Compl. ¶¶ 64, 71, 76.) Because of the Court's ruling on the previous motion to dismiss holding that the IGB was entitled to sovereign immunity and its members had absolute immunity, they cannot be held

intracorporate conspiracy doctrine where the complaint alleged "a widespread pattern of retaliation by multiple defendants throughout the [Chicago Police Department's] ranks"). Finally, Defendants' conspiracy allegedly involved unfavorable actions taken with respect to three different video gaming establishment license applications and occurred over a period spanning more than four years. *See Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 832 F. Supp. 2d 940, 949 (N.D. Ill. 2011) (applying the broad discriminatory pattern exception where the plaintiff alleged a conspiracy involving multiple acts taken over a period of 16 months). And that does not even take into account Plaintiff's allegations regarding unfavorable treatment directed toward Sypolt's wife. Thus, insofar as the intracorporate conspiracy doctrine applies to § 1983 conspiracy claims, it does not furnish a basis for dismissal of the amended complaint at this stage because Plaintiffs' allegations support the application of both exceptions to the doctrine.

### B. Existence of Conspiracy

Defendants next argue that Plaintiffs have failed to plead the existence of a conspiracy adequately. To plead a § 1983 conspiracy, a plaintiff need only allege "a plausible account of a conspiracy." *Geinosky*, 675 F.3d at 749. That requires a plaintiff to "indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Drager*, 969 F. Supp. 2d at 984 (internal quotation marks omitted). Further, it is not necessary at this stage for a plaintiff to "establish what roles the individual defendants played nor does [the plaintiff] need to allege facts dispositively proving a 'meeting of the minds.'" *Haliw v. City of South Elgin*, No. 19 C 01515, 2020 WL 1304697, at *3 (N.D. Ill. Mar. 18, 2020). "At the same time, the plaintiff must allege that 'a particular defendant joined the conspiracy and knew of its

---

liable for their involvement in the alleged conspiracy. Accordingly, they are not named as Defendants in the amended complaint.

scope.'" *Fulton*, 2021 WL 2712060, at *11 (quoting *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).

Here, the Court finds that Plaintiffs sufficiently allege the existence of a conspiracy with respect to Hobgood, Aguilar, and Ostrowski. Specifically, Plaintiffs allege an agreement between those Defendants and the IGB to retaliate against Sypolt for prosecuting the Windy City Promotions lawsuit by having the Board unreasonably delay votes on Plaintiffs' video gaming establishment license applications, thereby depriving Plaintiffs of video gaming revenue during the pendency of the applications. The alleged conspiracy began, at the latest, in 2017 when Phase IV-D submitted its video gaming establishment license application and extended through April 2021 when the IGB issued its final ruling denying Trudy's Café's two applications.

Plaintiffs' allegations also plausibly suggest that Hobgood, Aguilar, and Ostrowski joined the conspiracy and knew of its scope. It was Hobgood who recounted many of the details of the conspiracy to Sypolt, explaining to Sypolt that Aguilar "would ensure that Trudy's Café would not receive" the licenses for which it had applied and that Ostrowski had directed certain retaliatory actions against Sypolt. (Am. Compl. ¶¶ 31, 48.) Hobgood further related that the IGB purposefully delayed votes on applications submitted by disfavored applicants with the goal of driving them out of business. (*Id.* ¶ 48.) And Plaintiffs allege that Hobgood directly participated in the conspiracy himself by recommending that the Board deny Trudy's Café's applications and revoke Phase IV-D's application in retaliation for the Windy City Promotions lawsuit. (*Id.* ¶ 49.) Taken together, Plaintiffs' allegations tend to show that Hobgood, Aguilar, and Ostrowski took coordinated action with the common purpose of undermining Plaintiffs' video gaming establishment license applications and the goal of causing Plaintiffs financial loss.

On the other hand, the amended complaint's allegations are sparse as to Fruchter's knowledge of and involvement in the purported conspiracy. Although Defendants cite the dearth of allegations specific to Fruchter as a reason for dismissal under Rule 12(b)(1), as discussed above, the issue is better viewed as whether Plaintiffs have stated a claim against him. The Court concludes that they have not. Plaintiffs' sole specific allegation concerning Fruchter's conduct is that when Fruchter learned that Hobgood had made certain improper requests of Sypolt, his only response was to ask why Sypolt had not reported that information earlier. (*Id.* ¶ 50.) That allegation sheds no light on whether Fruchter was aware of the conspiracy or agreed to participate in it. Nor does the fact that Fruchter assumed Ostrowski's Administrator position at the IGB, by itself, support a reasonable inference that Fruchter joined the conspiracy against Plaintiffs. *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (explaining that "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him" was not sufficient, and dismissing a defendant who was merely alleged to have aided co-conspirators in continuing violations of the plaintiff's constitutional rights); *see also Bell v. City of Milwaukee*, 746 F.2d 1205, 1255 (7th Cir. 1984) (stating that one cannot infer a supervisor's participation in a conspiracy simply on the basis of his supervisory position), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).

The Court thus concludes that Plaintiffs have adequately pleaded the existence of a conspiracy and the involvement of Hobgood, Aguilar, and Ostrowski. But because Plaintiffs' limited allegations against Fruchter fail plausibly to allege that he joined the conspiracy and knew of its scope, the claims against Fruchter are dismissed.

### C. Underlying Constitutional Violations

Finally, a viable § 1983 conspiracy claim must be predicated on an underlying constitutional harm. Here, Plaintiffs allege that Defendants violated their rights under the Equal Protection Clause of the Fourteenth Amendment and the First Amendment.

### i. Equal Protection

Plaintiffs assert a class-of-one equal protection claim. Although equal protection claims usually address "governmental classifications that affect some groups of citizens differently than others," a plaintiff does not necessarily need to allege class-based discrimination to maintain such a claim. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (internal quotation marks omitted). Rather, a plaintiff may bring a valid equal protection claim as a "class of one" by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). At the motion to dismiss stage, a plaintiff asserting a class-of-one equal protection claim "must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (internal quotation marks omitted).

"The classic class-of-one claim is illustrated when a public official, with no conceivable basis for his action other than spite or some other improper motive[,] comes down hard on a hapless private citizen." *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) (internal quotation marks omitted). It remains an open question in the Seventh Circuit whether a class-of-one plaintiff must plead personal animus or improper motive as an element of the claim. The Seventh Circuit, sitting *en banc*, split three ways on the question in *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (*en banc*), with no position obtaining a majority. The

plurality expressed that a plaintiff "should be required to plead and prove that the disparate treatment was motivated by personal ill will or other illegitimate purpose; that is, a purpose unrelated to public duty." *D.B. ex. rel Kurtis B.*, 725 F.3d at 685 (citing *Del Marcelle*, 680 F.3d at 888–900 (Posner, J.) (plurality opinion)). The dissent took the position that "personal animus or other improper motive is not an element of the claim but just one way to prove that the defendant's action lacked a rational basis." *Id.* (citing *Del Marcelle*, 680 F.3d at 905–18 (Wood, J., dissenting)). And one concurring judge "concluded that motive or intent 'has no role at all' in class-of-one litigation." *Id.* (quoting *Del Marcelle*, 680 F.3d at 900 (Easterbrook, C.J., concurring in the judgment)). This Court need not take sides on the split here because Plaintiffs allege both that Defendants' conduct was motivated by their personal animus toward Sypolt and that there was no rational basis for why Sypolt was treated differently.

Generally, a plaintiff will attempt to show the absence of a rational basis by identifying comparators—*i.e.*, similarly situated persons who were treated differently. *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015). A similarly situated comparator is one that is "identical or directly comparable to the plaintiff in all material respects." *Id.* (internal quotation marks omitted). Where the plaintiff and the comparator share all the same principal characteristics but the comparator "received more favorable treatment, this may show there was no proper motivation for the disparate treatment." *Swanson*, 719 F.3d at 784. Here, Plaintiffs allege that three establishments were similarly situated to the two owned by Trudy's Café but received more favorable treatment from the IGB. (Am. Compl. ¶¶ 65–67.) Like Trudy's Café's Midlothian and Sauk Village establishments, each comparator was a restaurant and bar located in a commercial retail location a short distance away from one of the Trudy's Café establishments. (*Id.*) But while the Trudy's Café establishments waited over a year for the Board to take any action on their video

gaming establishment license applications, all three comparators allegedly had their applications approved within a year of submission. (*Id.*)[6]

For purposes of the motion to dismiss, the Court finds that Plaintiffs have sufficiently pleaded that their establishments were treated differently from similarly situated bars and restaurants. Further, nothing in the amended complaint reveals a rational basis for this differential treatment. To the contrary, Plaintiffs allege that, by Hobgood's own admission, the IGB was motivated by its anger at Sypolt for challenging its authority. Because Plaintiffs have pleaded a class-of-one equal protection claim, they may pursue a § 1983 conspiracy claim based on that theory.

     *ii.*   *First Amendment*

Plaintiffs also allege that Defendants violated their rights under the First Amendment by treating their video gaming establishment license applications unfavorably in retaliation for Sypolt bringing the Windy City Promotions litigation. To state a First Amendment retaliation claim, a plaintiff must allege that: (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" for the defendants' decision to take retaliatory action. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021).

The Seventh Circuit has "recognized that a plaintiff's exercise of the First Amendment right to petition the government for the redress of grievances may qualify for the first prong of a First Amendment claim." *Id.* (internal quotation marks omitted). That right to petition "extends to the courts in general and applies to litigation in particular." *Id.* (internal quotation marks omitted).

---

[6] One comparator's application was approved within five months of submission; another received approval within about seventh months; and the third received approval within about nine months. (Am. Compl. ¶¶ 65–67.)

Thus, Sypolt has alleged that he was engaged in protected First Amendment activity when he, acting through one of the companies he managed, sued the IGB.[7]

In retaliation for Sypolt's protected activity, Defendants are alleged to have taken actions broadly designed to prevent Plaintiffs from receiving fair treatment from the IGB. By prolonging the Board's consideration of Plaintiffs' video gaming establishment license applications through unreasonable delays and pretextual denials, Defendants allegedly caused Plaintiffs to lose video gaming license revenue they would otherwise have earned had they been treated the same as an ordinary applicant. Plaintiffs claim, in essence, that Defendants' retaliation prevented Plaintiffs from participating in the video gaming industry. The resulting loss of revenue and business qualify as the type of deprivations that would likely deter Plaintiffs and others regulated by the IGB from challenging the IGB in court. Plaintiffs' allegations, if true, demonstrate that Sypolt's Windy City Promotions lawsuit was at least a motivating factor behind Defendants' retaliatory conduct. Plaintiffs have therefore adequately alleged that Defendants conspired to retaliate against Plaintiffs for exercising their First Amendment rights.

---

[7] Neither party addresses whether Plaintiffs can properly claim that their right of access to the courts was affected by retaliation related to a lawsuit filed by a third-party business entity based on Sypolt's common association with that third party and the Plaintiff businesses here. The Court expresses no view on that issue, and nothing in this opinion should be construed as precluding Defendants from raising it at a later stage.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 48) is granted in part and denied in part. Counts III and IV of the amended complaint are dismissed without prejudice to Plaintiffs seeking relief in the Illinois Court of Claims. Plaintiffs may proceed with their § 1983 claims in Counts I and II as to Defendants Hobgood, Aguilar, and Ostrowski, but their §1983 claims in those counts against Defendant Fruchter are dismissed.

ENTERED:

Dated:  January 19, 2022

_____
Andrea R. Wood
United States District Judge